**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------- X

JEREMIAH SPRUILL,

                        Plaintiff,

  - against -

THE CITY OF NEW YORK, NEW YORK COUNTY
DISTRICT ATTORNEY CYRUS VANCE, NEW YORK
CITY POLICE DEPARTMENT UNDERCOVER OFFICER
UC0039, NEW YORK CITY POLICE DEPARTMENT
UNDERCOVER OFFICER UC0076, NEW YORK CITY
POLICE DEPARTMENT SERGEANT ROBERT KELLY
(Shield No. 3349), NEW YORK CITY POLICE
DEPARTMENT DETECTIVE OSCAR FERNANDEZ (Shield
No. 7103), NEW YORK CITY POLICE DEPARTMENT
DETECTIVE JAMAL HAIRTSON (Shield No. 203), NEW
YORK CITY POLICE DEPARTMENT DETECTIVE
CHRISTOPHER HEREDIA (Shield No. 1339), NEW YORK
CITY POLICE DEPARTMENT DETECTIVE ERICK ORTIZ
(Shield No. 3383), in their individual and official capacities.

                        Defendants.

-------------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff Jeremiah Spruill, by his attorneys, Beldock Levine & Hoffman LLP, as and for

his complaint against the Defendants alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this civil rights action under the United States Constitution through

42 U.S.C. § 1983 seeking to recover for injuries caused by the denial of his constitutional rights,

which resulted in his unlawful arrest, malicious prosecution, and wrongful conviction.

2.      On March 12, 2014, Mr. Spruill was lawfully walking to the subway on his way to

work when New York City Police Department officers violently grabbed him, forced him against

a wall, and handcuffed him. Unbeknownst to Mr. Spruill, he had been falsely identified as a

participant in a drug sale by Defendant UC39, a notorious undercover narcotics officer who had a

history of falsely accusing innocent persons of drug crimes. The police officers' search of Mr. Spruill failed to reveal any evidence of a drug sale—or of any criminal activity at all—but the police officers nonetheless arrested Mr. Spruill and caused him to be prosecuted for selling drugs based on Defendant UC39's false allegations.

3.      The New York County District Attorney's Office was aware of Defendant UC39's history of false arrests based on knowingly false information and, upon information and belief, had even included his name on a list of police officers who should be barred from testifying because of their histories of lying. The New York County Attorney's Office withheld this information from Mr. Spruill's defense counsel and the court, and intentionally and knowingly allowed Defendant UC39 to testify falsely at hearings and trial, while improperly representing that Defendant UC39 was an honest and upstanding detective. As a result of Defendant UC39's false testimony and the New York County District Attorney's Office withholding evidence, Mr. Spruill was convicted of the sale of a controlled substance and sentenced to six years in prison. In the spring of 2017, Mr. Spruill was released on bail pending a Criminal Procedure Law § 440.10 motion after over three years of incarceration. In November of 2017, the New York County District Attorney's office agreed to voluntarily dismiss the charges after finally acknowledging Defendant UC39's perjurious past, and Mr. Spruill's conviction was vacated in January of 2018.

4.      Plaintiff now seeks redress for the substantial injuries he suffered as a result of his unlawful arrest, malicious prosecution, and wrongful conviction: (i) compensatory damages for Mr. Spruill's psychological and emotional distress, and other financial loss caused by the illegal actions of the Defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to Plaintiff's claims took place.

## JURY DEMAND

7.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## PARTIES

8.      Plaintiff Jeremiah Spruill is a citizen of the United States and a resident of the State of New York. At all times relevant to this complaint, Mr. Spruill resided in New York County, in the State of New York.

9.      Defendant City of New York ("the City") is a municipal entity created and authorized under the laws of the State of New York.

10.     The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11.     Defendants UC39, UC76, Kelly, Ortiz, Fernandez, Hairston, and Heredia ("NYPD Defendants") are NYPD officials who unlawfully detained Mr. Spruill without probable cause,

lodged false criminal charges against him, forwarded fabricated evidence to the prosecutor's office, and maliciously prosecuted him.

12.     Upon information and belief, the NYPD Defendants are still NYPD officers.

13.     At all times relevant herein, the NYPD Defendants have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

14.     At all times relevant herein, the NYPD Defendants violated clearly established rights and standards under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

15.     Defendant Cyrus Vance is, and he and his predecessors in office were, at all times relevant to the circumstances underlying the complaint, employed by the City of New York, as the New York County District Attorney. He is being sued in his official capacity as District Attorney.

## STATEMENT OF FACTS

### Defendant UC39's History of Misconduct

16.     Defendant UC39 is an undercover narcotics officer with a history of improperly generating drug arrests by falsely identifying innocent persons as participants in drug sales and then falsely testifying at hearings and trial to justify his false arrests.

17.     Defendant UC39's police misconduct was committed over a long period of time and documented in several civil rights actions filed against him, some of which were filed against other of the NYPD Defendants, including, *inter alia*:

- *Garnett v. City of New York, et al.*, 13-cv-07083 (SDNY) (also against Defendant Ortiz);

- *Soto v. City of New York*, *et al*, 09-cv-566 (SDNY);

- *Williams v. City of New York, et al*, 13-cv-8643 (SDNY);

- *Graham v. City of New York, et al.,* 14-cv-10092 (SDNY);

- *Diaz v. City of New York, et al.*, 14-cv-5126 (SDNY) (also against Defendant Heredia);

- *Vazquez v. City of New York, et al.*, 14-cv-3333 (SDNY) (also against Defendant Ortiz);

- *West, et al. v. City of New York, et al.*, 09-cv-09207 (SDNY);

- *Bluett v. City of New York, et al,* 150483/2014 (NY Co. Sup. Ct.) (also against Defendants Hairston and Heredia)*;*

- *Tucker v. City of New York, et al.,* 161282/2014 (NY Co. Sup. Ct.) (also against Defendants Hairston, Ortiz, and Heredia);

- *Cruz v. City of New York, et al.*, 15-cv-1327 (SDNY) (also against Defendant Fernandez);

- *White v. City of New York, et al*, 16-cv-6925 (SDNY) (also against Defendants UC76 and Kelly);

- *Alvarez v. City of New York, et al*, 15-cv-8063 (SDNY) (also against Defendants Heredia, Kelly, and Hairston);

- *Moore v. City of New York, et al.,* 15-cv-7537 (SDNY);

- *Shelton v. City of New York, et al.,* 15-cv-4786 (SDNY);

- *Curry v. Mackenzie, et al.,* 15-cv-2766 (SDNY); and

- *Smith v. Hairston, et al.,* 15-cv-2764 (SDNY) (also against Defendant Heredia).

18. Upon information and belief, in 2014, Defendant UC39's practice of falsely accusing and testifying against innocent persons to generate drug arrests was known by members of the NYPD, including the other NYPD Defendants, and members of New York County District Attorney's Office, including District Attorney Vance and Assistant District Attorney ("ADA") Kelly Rahn, the prosecutor in Mr. Spruill's criminal case.

19.     Upon information and belief, in 2014, prior to Mr. Spruill's trial, the New York County District Attorney's Office had voluntarily dismissed at least five cases in which Defendant UC39 was the sole witness in a purported drug sale because his testimony was patently unreliable.

20.     Upon information and belief, in 2014, the New York County District Attorney's office included Defendant UC39's name on a list of police officers who they believed should be barred from testifying because of their histories of lying.

**Plaintiff's False Arrest**

21.     On March 12, 2014, the NYPD Defendants were conducting a buy-and-bust operation in West Harlem in an effort to obtain information about crime in the area.

22.     Jeremiah Spruill is a longtime New York City resident.

23.     In March 2014, Mr. Spruill worked at Fresh & Co., a food service company, to support his wife and her two children and to prepare for the child he and his wife were expecting.

24.     On March 12, 2014, at approximately 3:00 p.m., Mr. Spruill was walking to the B train on 116th Street and 8th Avenue on his was to work when Detectives Fernandez, Heredia, and Hairston violently seized Mr. Spruill by his neck and forced him against a building.

25.     The police officers handcuffed and searched Mr. Spruill.

26.     The police officers' search did not reveal any criminal contraband or evidence of criminal activity; Mr. Spruill had $3.00, his metro cards, keys, cell phone and charger, and identification.

27.     Mr. Spruill did not have any drugs or prerecorded currency on his person.

28.     Defendant Kelly took Mr. Spruill's pedigree information and his possessions, and knew that Mr. Spruill was not in possession of drugs or prerecorded currency.

29.     Defendant Ortiz acted as the arresting officer and arrested Mr. Spruill without probable cause.

30.     Upon information and belief, Defendant UC76, whose role in the buy-and-bust operation as the "ghost" was to observe Defendant UC39 and the individuals he encountered during a drug sale, knew that Mr. Spruill was not among the individuals Defendant UC39 encountered in the operation.

31.     Based on the false identification by Defendant UC39, and without any corroborating justification to believe Mr. Spruill had engaged in criminal activity, the officers arrested him.

32.     None of the officers intervened or took affirmative steps to prevent Mr. Spruill's false arrest.

33.     The officers placed Mr. Spruill in a prisoner van and drove him around the city for approximately five hours prior to taking him to the 23rd Precinct.

34.     Mr. Spruill, who is diabetic, was not allowed to use the restroom during this time, which caused him to urinate on himself.

**Prosecution of Plaintiff**

35.     Following Mr. Spruill arrest, Defendants UC39 and Ortiz prepared false police reports regarding Mr. Spruill's arrest.

36.     Upon information and belief, the police reports created by Defendants UC39 and Ortiz falsely stated that Mr. Spruill had exchanged drugs for prerecorded buy money.

37.     Upon information and belief, Defendant Kelly signed off on Defendants UC39 and Ortiz's police reports as their supervisor, even though he knew they contained false information.

38.     Upon information and belief, Defendants UC39, Ortiz, and Kelly forwarded the false police reports to the New York County District Attorney's office, knowing that they would be used to prosecute Mr. Spruill.

39.     Upon information and belief, a prosecutor drafted a complaint charging Mr. Spruill with two counts of Criminal Sale of a Controlled Substance in the Third Degree and one count of Criminal Possession of a Controlled Substance in the Seventh Degree based on the false information that had been provided by Defendants UC39 and Ortiz, and approved by Defendant Kelly.

40.     After having been held in custody for approximately 24 hours, Mr. Spruill was brought before a judge and informed of the charges against him.

41.     Mr. Spruill pleaded not guilty.

42.     Mr. Spruill was unable to post bail and was held on Rikers Island as he awaited grand jury proceedings.

43.     Upon information and belief, Defendant UC39 and UC76 made false statements about Mr. Spruill's alleged conduct to ADA Kelly Rahn, the prosecutor in Mr. Spruill's case, in preparation for the grand jury.

44.     On March 28, 2014, a grand jury was convened and Defendant UC39 falsely testified that he observed Mr. Spruill selling drugs.

45.     Based on Defendant UC39's false testimony that Mr. Spruill had been involved in selling him drugs, the grand jury indicted Mr. Spruill on two counts of the class B felony criminal sale of a controlled substance in the third degree, in violation of New York Penal Law §220.39(1).

46.     Prior to Mr. Spruill's trial, a suppression hearing was held.

47.     At the suppression hearing, UC39 falsely testified that Mr. Spruill was seized after UC39 broadcasted the description of a suspect wearing a "green shirt under a black jacket" to the other NYPD Defendants.

48.     The court suppressed the purported description as too vague to establish probable cause to arrest Mr. Spruill.

49.     At a subsequent hearing, Defendant UC39 self-servingly changed his testimony in an attempt to rectify what the judge had ruled was an insufficient identification and falsely testified that he had allegedly seen Mr. Spruill twice after the alleged drug sale occurred and had directed Defendant UC76 via radio to follow Mr. Spruill after the first identification.

50.     Prior to trial, Mr. Spruill was detained at the Brooklyn Correctional Facility for approximately eight months. The facility had frequent lockdowns, unsanitary conditions, and poor ventilation.

51.     During trial, Mr. Spruill was detained at the Manhattan Detention Center for approximate one month.

52.     At Mr. Spruill's criminal trial in New York County Supreme Court, the prosecution's case depended almost entirely on Defendant UC39's false testimony.

53.     Defendants Kelly, Fernandez, and Ortiz testified at trial, though none had seen Mr. Spruill involved in Defendant UC39's buy-and-bust operation, instead, seeing him first at the location of his arrest.

54.     By the time of Mr. Spruill's criminal trial, Defendant UC39 had ten civil rights suits against him, all alleging false identifications and false reports to prosecutors, resulting in the dismissal of the underlying criminal charges.

55.     Upon information and belief, ADA Rahn knew of at least ten civil lawsuits against Defendant UC39 for providing false testimony and/or making false criminal accusations against defendants in criminal matters, but did not disclose this information to Mr. Spruill's defense attorney, the trial court, or the jury.

56.     Mr. Spruill's defense counsel discovered one such case, *Garnett v. City of New York, et al.*, 1:13-cv-07083 (S.D.N.Y. Oct. 4, 2013), *aff'd Garnett v. Undercover, C00039*, 838 F.3d 265 (2d Cir. 2016), wherein a federal jury had returned a verdict against Defendants City of New York and UC39, for the denial of the claimant's right to a fair trial because of Defendant UC39's testimony around the same time as Mr. Spruill's trial and brought the case to the attention of the court.

57.     Even after Mr. Spruill's defense counsel's discovery of *Garnett*, ADA Rahn did not disclose the existence of the other cases against UC39.

58.     Upon information and belief, prior to Mr. Spruill's trial, ADA Rahn knew the New York County District Attorney's Office had voluntarily dismissed at least five cases in which UC39 was the sole witness in a buy-and-bust operation because his testimony was incredible.

59.     One of those recommendation letters of dismissal implicated both Defendants UC39 and UC76 for their incredible testimonies.

60.     Upon information and belief, ADA Rahn knew Defendant UC39 was included in the New York County District Attorney's Office's list of NYPD officers who had knowingly provided false testimony and did not disclose this information to Mr. Spruill's defense counsel.

61.     Upon information and belief, ADA Rahn knew about the cases that were voluntarily dismissed involving Defendant UC39, and the office's internal investigation regarding Defendant UC39's other cases, but did not disclose this information to Mr. Spruill's defense counsel.

62.     In her summation, despite her knowledge of UC39's history of false identifications, ADA Rahn relied heavily on the incredible testimony of Defendant UC39 and inappropriately vouched for his credibility, including stating, *inter alia*, "we know that Undercover 39 is not going to just say he saw a subject for the sake of apprehending someone to complete his narrative."

63.     On December 2, 2014, Mr. Spruill was convicted of two counts of criminal sale of a controlled substance in the third degree.

64.     On March 2, 2015, Mr. Spruill was sentenced to an aggregate term of six years imprisonment and three years of post-conviction supervision.

**Plaintiff's Motion to Vacate the Conviction**

65.     In or about the spring of 2017, Mr. Spruill was released on bail, pending his Criminal Procedure Law § 440.10 application.

66.     On November 20, 2017, Mr. Spruill moved under C.P.L. § 440.10(1)(g) to vacate his conviction based on the newly discovered evidence of Defendant UC39's extensive history of misconduct.

67.     The New York County District Attorney's Office consented to Mr. Spruill's motion and filed their own letter recommending dismissal of the indictment.

68.     The New York County District Attorney's Office consent letter acknowledged that ADA Rahn devoted much of her summation to convincing the jury that Defendant UC39 was a reliable and credible witness.

69.     On January 8, 2018, almost four years after Mr. Spruill's wrongful arrest, conviction, and imprisonment, the New York County Supreme Court vacated claimant's conviction and dismissed the indictment.

## DAMAGES

70.     Mr. Spruill was unlawfully stopped, searched, arrested, prosecuted, and imprisoned from March 12, 2014 until released on bail in the spring of 2017—all for a crime he did not commit.

71.     The injuries and damages sustained by Mr. Spruill arising from his unlawful stop, search, arrest, prosecution, and imprisonment include but are not limited to the following: loss of freedom; pain and suffering; physical injuries, the worsening of injuries due to inadequate medical care; severe mental anguish; emotional distress; loss of family relationships; psychological damage; loss of property; legal expenses; loss of income; humiliation, indignities, and embarrassment; degradation; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, social activities, travel, enjoyment, and expression. As a direct result of his unlawful arrest and conviction, many of the effects of these injuries continue to this day and will continue into the future.

72.     As a direct and proximate result of Defendants' actions, Mr. Spruill was unlawfully arrested, wrongly convicted, and imprisoned for over three years and suffered the other grievous and continuing damages and injuries set forth above.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983, United States Constitution Amendments IV and XIV
### False Arrest and Imprisonment
### *Against Defendants UC39 and UC76*

73.     Plaintiff Jeremiah Spruill realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

74.     Defendants UC39 and UC76 deprived Mr. Spruill of his clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution, including, but not limited to:

a.    freedom from arrest without probable cause; and

b.    freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention Mr. Spruill was aware and did not consent.

75.    Defendants UC39 and UC76 intended to and did cause Mr. Spruill's confinement for an extended period of time, of which confinement Mr. Spruill was conscious and to which he did not consent. Mr. Spruill's confinement was not otherwise privileged.

76.    Specifically, Defendants UC39 and UC76, acting individually and in concert, caused Mr. Spruill to be arrested on March 12, 2014 when they knew probable cause did not exist to charge Mr. Spruill with any crime. As a result, Mr. Spruill was taken into custody, transported to the 23rd Precinct, and held in custody at the 23rd Precinct for several hours until he was transferred to central booking where he finally appeared before a judge about one day after his arrest.

77.    Defendants UC39 and UC76 performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Spruill's clearly established constitutional rights. No reasonable officer in 2014 would have believed this conduct was lawful.

78.    As a direct and proximate result of Defendants UC39 and UC76's actions, Mr. Spruill was wrongly imprisoned for approximately one day before he was charged and suffered the other grievous and continuing damages and injuries set forth above.

79.    The unlawful conduct of Defendants UC39 and UC76 was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983, United States Constitution Amendments V, VI, and XIV
### Deprivation of Liberty Without Due Process of Law, and Denial of the
### Right to a Fair Trial by Fabricating Evidence
#### *Against Defendants UC39 and UC76*

80.     Plaintiff Jeremiah Spruill realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81.     Defendants UC39 and UC76 deprived Mr. Spruill of his clearly established constitutional rights, secured under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, to a fair trial.

82.     Defendants UC39 deprived Mr. Spruill of his right to a fair trial by deliberately and repeatedly presenting false testimony about Mr. Spruill's involvement in a drug sale.

83.     Defendant UC39 further deprived Mr. Spruill of his right to a fair trial by fabricating inculpatory evidence of an "interim sighting" of Mr. Spruill, in an ill-fated attempt to preserve the false charges levied against Mr. Spruill.

84.     Defendant UC39 deprived Mr. Spruill of his right to a fair trial by fabricating evidence of Mr. Spruill's involvement in his buy report.

85.     Upon information and belief, Defendant UC76 deprived Mr. Spruill of his right to a fair trial by fabricating evidence of Mr. Spruill's involvement in preparation for the grand jury and/or corroborating UC39's account of the events of March 12, 2014.

86.     Defendants UC39 and UC76 performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Spruill's clearly established constitutional rights. No reasonable officer in 2014 would have believed this conduct was lawful.

87.     Defendants UC39 and UC76 each knew that they had duties under the United

14

States Constitution as well as the laws and regulations of the State and the City of New York to: (a) disclose *Brady* material to the New York County District Attorney's Office so that it could be disclosed to the defense and used to prevent the conviction of Mr. Spruill based upon false, misleading, or incomplete evidence and argument, and/or (b) make truthful statements to the prosecution concerning the existence of *Brady* material and not to cause or continue Mr. Spruill's unconstitutional conviction and resultant injuries by lying about such evidence.

88.     Notwithstanding Defendants UC39 and UC76's awareness of their duties, prior to, during, and following Mr. Spruill's trial, they intentionally, recklessly, and/or with deliberate indifference to their legal obligations, concealed *Brady* material from, lied about, and otherwise failed to disclose *Brady* material to prosecutors and Mr. Spruill.

89.     Defendants UC39 and UC76 did so with the knowledge that their conduct would result in the grand jury and jury being provided a false or misleading picture of the quality of the identification evidence against Mr. Spruill, and of the reliability and the thoroughness, honesty, and professionalism of the police investigation, and would thereby substantially increase the likelihood of a conviction, in violation of Mr. Spruill's federal constitutional rights.

90.     In the context of the weak trial case that rested on the dubious identification of Defendant UC39, any evidence that further diminished the quality of either identification was significant and material to Mr. Spruill's right to due process and a fair trial.

91.     Defendants UC39 and UC76's actions deprived Mr. Spruill of due process and a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983, United States Constitution Amendments V, VI, and XIV**
**Deprivation of Liberty Without Due Process of Law and**
**Denial of the Right to a Fair Trial by the Suppression of *Brady* Information**
*Against Defendants UC39 and Vance*

92.     Plaintiff Jeremiah Spruill realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93.     Defendants UC39 and Vance, acting individually and in concert, deprived Mr. Spruill of his clearly established constitutional right under the Sixth Amendment of the United States Constitution to timely disclosure of material evidence favorable to the defense under *Brady* and under the Fourteenth Amendment of the United States Constitution by denying Mr. Spruill's right to due process of law.

94.     Defendants UC39 and Vance deprived Mr. Spruill of his Sixth Amendment right by withholding material exculpatory and impeachment evidence, despite their absolute constitutional obligation to do so, including without limitation: the existence of civil rights law suits against Defendant UC39 at the time of the trial; the existence of the voluntary dismissal of criminal cases in which Defendant UC39 was the sole witness and provided incredible testimony; upon information and belief, the inclusion of Defendant UC39 on the New York County District Attorney's Office's list of "problem officers" who knowingly provided false testimony in the past; and the internal investigation the New York County District Attorney's Office was conducting regarding cases in which Defendant UC39 testified.

95.     As evidenced through the maintenance of a "problem officers" list and internal investigations by the New York County District Attorney's Office into cases where Defendant UC39 provided testimony in criminal prosecutions, Defendant Vance knew that Assistant District

16

Attorneys would be confronted with situations in which they would need to rely upon the testimony of NYPD officers who previously provided false testimony, including Defendant UC39.

96.     Under Defendant Vance, Assistant District Attorneys have mishandled cases involving NYPD officers who have previously provided false testimony. For example, upon information and belief, at least five individuals, including Mr. Spruill, who were arrested, prosecuted, and convicted based on the false testimony of Defendant UC39 subsequently had their convictions vacated, on consent of Defendant Vance and/or his office.

97.     By failing to disclose Defendant UC39's false testimony to criminal defendants, Defendant Vance and Assistant District Attorneys working under his leadership have deprived citizens of their constitutional right to, *inter alia*, due process under the Fourteenth Amendment of the United States Constitution and a right to *Brady* material under the Sixth Amendment of the United States Constitution.

98.     Defendants UC39 and Vance intentionally or with deliberate indifference caused said *Brady* information to be withheld from Mr. Spruill and his attorney by failing to disclose it.

99.     Defendants UC39 and Vance performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Spruill's clearly established constitutional rights. No reasonable officer, District Attorney, or Assistant District Attorney would have believed this conduct was lawful.

100.    As a direct and proximate result of Defendants' actions, Mr. Spruill was wrongly convicted and imprisoned for over three years and suffered the other grievous and continuing damages and injuries set forth above.

### FOURTH CAUSE OF ACTION
**42 U.S.C. § 1983, United States Constitution Amendments IV and XIV**
**Malicious Prosecution**
*Against Defendants UC39, UC76, Kelly, Fernandez, and Ortiz*

101.    Plaintiff Jeremiah Spruill realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102.    Defendants UC39, UC76, Kelly, Fernandez, and Ortiz, with malice and knowing that probable cause did not exist to arrest Mr. Spruill or prosecute him for the criminal sale of a controlled substance, acting individually and in concert caused him to be arrested, charged, and prosecuted for that crime, thereby violating his clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, to be free of unreasonable searches and seizures.

103.    Defendants UC39, UC76, Kelly, Fernandez, and Ortiz, acting in concert with one another and/or others, continued and caused the continuation of criminal proceedings against Mr. Spruill.

104.    Defendants UC39, UC76, Kelly, Fernandez, and Ortiz intentionally withheld from and misrepresented to prosecutors, the grand jury, and the trial jury facts that further vitiated probable cause against Mr. Spruill, including but not limited to Defendant UC39's lengthy history of deliberately lying under oath and misidentifying individuals for the purpose of implicating them in criminal prosecutions.

105.    Mr. Spruill is completely innocent of the charges levied against him by Defendants UC39 and Ortiz. The prosecution terminated in his favor on January 8, 2018, in large part because of the information that was deliberately withheld by the Defendants, when Mr. Spruill was exonerated and the indictment was voluntarily dismissed.

18

106.     Defendants UC39, UC76, Kelly, Fernandez, and Ortiz also failed to conduct a constitutionally adequate investigation in light of decisive physical evidence indicating that Mr. Spruill could not have been involved in the alleged drug sale, including but not limited to the fact that Mr. Spruill did not possess drugs, prerecorded buy money, or any criminal contraband.

107.     Defendants UC39, UC76, Kelly, Fernandez, and Ortiz performed the above-described acts under color of state law intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Spruill's clearly established constitutional rights. No reasonable officer at the time would have believed this conduct was lawful.

108.     As a direct and proximate result of Defendant's actions, Mr. Spruill was wrongly convicted and imprisoned for over three years and suffered the other grievous and continuing damages and injuries set forth above.

### FIFTH CAUSE OF ACTION
**42 U.S.C. § 1983, United States Constitution Amendments V, VI, and XIV**
**Failure to Intervene**
*Against Defendants UC76, Kelly, Ortiz, Fernandez, Hairston, and Heredia*

109.     Plaintiff Jeremiah Spruill realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

110.     Defendants UC76, Kelly, Ortiz, Fernandez, Hairston, and Heredia all have an affirmative duty to intervene to prevent their fellow officers from infringing on a citizen's constitutional rights.

111.     Defendants UC76, Kelly, Ortiz, Fernandez, Hairston, and Heredia, acting in concert with one another and/or others, continued and caused the deprivation of Mr. Spruill's constitutional right to a fair trial by failing to intervene in the continued criminal proceedings against Mr. Spruill.

112.     A reasonable officer in Defendants UC76, Kelly, Ortiz, Fernandez, Hairston, and Heredia's position, who had worked with Defendant UC39 in other buy-and-bust operations and

some of whom had themselves been named defendants in civil rights suits in which Defendant UC39 was alleged to have fabricated evidence, would have known that Defendant UC39's identification of Mr. Spruill was incredible and thereby that Mr. Spruill's rights were being violated.

113.    Defendants Kelly, Ortiz, Fernandez, Hairston, and Heredia, who effected the arrest without probable cause, testified at the grand jury, suppression hearing(s), and criminal trial, had multiple opportunities to prevent the harm to Mr. Spruill but repeatedly failed to do so.

114.    Defendant UC76, who was the "ghost" officer in the alleged buy-and-bust operation on March 14, 2014, who was himself implicated by Defendant UC39 as an active participant in the identification and arrest of Mr. Spruill, also had a realistic opportunity to intervene to stop the violation(s) of Mr. Spruill's constitutional rights but failed to do so.

115.    Defendants UC76, Kelly, Ortiz, Fernandez, Hairston, and Heredia performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Spruill's clearly established constitutional rights. No reasonable officer would have believed this conduct was lawful.

116.    As a direct and proximate result of Defendants UC76, Kelly, Ortiz, Fernandez, Hairston, and Heredia's actions, Mr. Spruill was wrongly convicted and imprisoned over three years and suffered the other grievous and continuing damages and injuries set forth above.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. §1983**
***Monell* Claim**
*Against Defendant City of New York for the Actions and Omissions*
*of the NYPD Defendants*

117.    Plaintiff Jeremiah Spruill realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

118.    The City of New York, through its Police Department and Police Commissioners, had in effect, prior to and at the time of the unlawful arrest, prosecution, and conviction of Mr. Spruill, overseen several interrelated *de facto* policies, practices and customs, including, *inter alia,* a policy, practice, and custom of failing to properly discipline officers who violate the United States Constitution or law, or otherwise transgress the rights of criminal suspects during their investigations, especially where it was found that such officers repeatedly fabricated evidence.

119.    The above NYPD *de facto* policies were reflected by the multiple acts of misconduct and illegality committed by Defendant UC39 over a long period of time without retribution, including the misconduct in Mr. Spruill's criminal trial, and as documented in recent civil rights actions filed against Defendant UC39 and against Defendant City of New York, including, *inter alia*: *Soto v. City of New York, et al*, 09-cv-566 (SDNY); *Williams v. City of New York, et al*, 13-cv-8643 (SDNY); *Graham v. City of New York, et al.,* 14-cv-10092 (SDNY); *Diaz v. City of New York,  et al.*, 14-cv-5126 (SDNY); *Vazquez v. City of New York,  et al.*,  14-cv-3333 (SDNY); *West, et al. v. City of New York, et al.*, 09-cv-09207 (SDNY); *Bluett v. City of New York, et al.,* 150483/2014 (NY Co. Sup. Ct.)*; Tucker v. City of New York, et al.,* 161282/2014 (NY Co. Sup. Ct.); *Cruz v. City of New York, et al.*, 15-cv-1327 (SDNY); *White v. City of New York, et al*, 16-cv-6925 (SDNY); *Alvarez v. City of New York, et al*, 15-cv-8063 (SDNY); *Moore v. City of New York, et al.,* 15-cv-7537 (SDNY); *Shelton v. City of New York, et al.,* 15-cv-4786 (SDNY); *Curry v. Mackenzie, et al.,* 15-cv-2766 (SDNY); *Smith v. Hairston, et al.,* 15-cv-2764 (SDNY).

120.    These interrelated policies, practices and customs, separately and/or together, were the direct and proximate cause of injury and damage to Mr. Spruill and violated his rights guaranteed by the United States Constitution, as well as his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

**SEVENTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
***Monell* Claim**
*Against Defendant City of New York for the Actions and Omissions*
*of the New York County District Attorney's Office*

121.    Plaintiff Jeremiah Spruill realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

122.    Beginning on or about March 12, 2014, members of the New York County District Attorney's Office, including ADA Kelly Rahn, violated Mr. Spruill's rights by causing his wrongful conviction through improperly withholding exculpatory evidence:

      a.  During Mr. Spruill's criminal trial, the prosecution concealed material evidence that its only witness against Mr. Spruill, UC39, was a defendant in numerous civil rights actions and that defendants in those cases were accused of drugs sales by UC39 without recovery of prerecorded buy money or contraband and/or after UC39 had lost sight of the individual he claimed sold him drugs, and that prosecutions against defendants whom UC39 accused of selling him drugs had been dismissed.

      b.  The aforementioned conduct of the New York District Attorney's Office in failing to disclose information favorable to the defense prior to or during the trial violated Mr. Spruill's constitutional rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

123.    Beginning on or about March 12, 2014, members of the New York County District Attorney's Office, including ADA Rahn, violated Mr. Spruill's rights by improperly vouching for the credibility of the People's witnesses.

a.   During Mr. Spruill's criminal trial, ADA Rahn improperly vouched for UC39, the only witness against Mr. Spruill, by describing UC39's training and experience in buy-and-bust cases, commending him as an exemplary officer, whose identifications were careful and accurate. Of the trial transcript, 30 of the 41 pages of ADA Rahn's summation is devoted to Defendant UC39.

b.   The aforementioned conduct of the New York District Attorney's Office in improperly vouching for the credibility of the People's witnesses violated Mr. Spruill's constitutional rights to due process and a fair trial by providing "testimony" in an unsworn manner during the prosecutor's summation due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

124.   The foregoing violations of Mr. Spruill's constitutional rights and his resultant injuries were directly, foreseeably, proximately, and substantially caused by conduct chargeable to a *de facto* policy, custom or practice on the part of the Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Mr. Spruill, subject to prosecution by the New York County District Attorney's Office, namely:

a.   The New York County District Attorney's Office's institution and implementation of plainly inadequate or unlawful policies, procedures, regulations, practices, and customs concerning:

i.   The continuing obligation to timely and fully disclose material favorable to the defense as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 450 U.S. 150 (1972), and their progeny, including

the existence and production to defense counsel of lists of NYPD officers with credibility issues; and

ii.   Improperly vouching for the People's witnesses.

b.  The New York County District Attorney's Office's deliberate indifference to the need (of which it has failed) to adequately instruct train, supervise, and discipline its employees with respect to such matters.

125.    The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and customs, including the failure to properly instruct, train, supervise, and discipline employees with regard thereto, were implemented or tolerated by policymaking officials for Defendant City, including the New York County District Attorney and his delegates, who knew:

a.  To a moral certainty that such policies, procedures, regulations, practices and customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

b.  That such issues present employees with difficult choices of the sort that instruction, training, supervision, and discipline will make correct choices less difficult and incentivize making correct choices;

c.  That the making of wrong choices by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him or her constitutional injury; and

d.  That employees of the New York County District Attorney's Office had a long history of making wrong choices in such matters.

126.    The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph, based upon:

a.  Numerous credible allegations, many of which were substantiated by judicial decisions (some of which are listed in Exhibit A, attached hereto and incorporated by reference), that the New York County District Attorney's Office ADAs had:

    i.  Failed to disclose information favorable to the defense that was required to be disclosed by the Constitutions and the laws of the United States and of the State of New York; and

    ii.  Improperly vouched for the credibility of the People's witnesses and thereby denying the defendant of his constitutional right to a fair trial by providing "testimony" in an unsworn manner during the prosecutor's summation, or for overall pervasive misconduct.

b.  The inherent obviousness of the need to train, supervise, and discipline ADAs in their aforementioned constitutional obligations to counteract the inherent pressure on prosecutors to obtain convictions.

127.  At the time of Mr. Spruill's prosecution, the New York County District Attorney's indifference to the aforementioned types of prosecutorial misconduct was evidenced by his failure to: conduct internal disciplinary investigations; discipline the prosecutors who were known to engage in such misconduct (including the prosecutors responsible for the misconduct found in the judicial decisions listed in Exhibit A); or refer such individuals for possible discipline by the Appellate Division's Disciplinary or Grievance Committees.

128.  Instead of disciplining such prosecutors for the aforementioned types of prosecutorial misconduct, the New York County District Attorney's policy, custom, or practice was to give them raises, promotions and commendations, based in part on their record of securing

indictments, winning at trial and extracting guilty pleas, even in weak cases or cases (like Mr. Spruill's) where reasonable grounds did not exist to believe the defendant committed the offense charged.

129.    Thus, prosecutors were incentivized to violate the constitutional rights of criminal defendants, since they knew they were likely to be rewarded for winning but would suffer no negative consequences if it ever became known that they were violating the rights of the defendants they were prosecuting.

130.    Further encouraging prosecutors to win at any cost was their knowledge that the New York County District Attorney's Office had no employee handbook or other published procedure for disciplining prosecutors who violated rules of behavior for criminal prosecutions.

131.    Indeed, prosecutors were emboldened to violate basic constitutional provisions protecting criminal defendants' constitutional right to a fair trial by their knowledge that the New York County District Attorney's Office was willing to pursue or tolerate policies, customs, and practices that brazenly violated criminal defendants' fundamental constitutional rights.

132.    The New York County District Attorney's policy, custom and practice of approval and/or ratification of, toleration and/or acquiescence in, or deliberate indifference to violations of his Office's constitutional obligations foreseeably encouraged such violations to continue and was a substantial cause of the violations of Mr. Spruill's constitutional rights beginning with the initiation of a criminal prosecution against him without probable cause and continuing throughout his criminal proceedings and trial.

133.    The aforesaid policies, procedures, regulations, practices, and customs of Defendant City were collectively and individually a substantial factor in bringing about the

aforesaid violations of Mr. Spruill's rights under the Constitution and Laws of the United States and in causing his damages.

134.    Under the principles of municipal liability for federal civil rights violations, the New York County District Attorney (or his authorized delegates) has final managerial responsibility for training, instructing, supervising, and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters, including but not limited to, their obligations not to elicit or manufacture false or unreliable "evidence," to make timely disclosure of exculpatory evidence to the defense, to refrain from offering false or misleading evidence, testimony and argument during pretrial and trial proceedings, and to correct such false or misleading evidence, testimony, and argument when they become aware of it.

135.    The New York County District Attorney, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to his Office's performance of its duties.

136.    The New York County District Attorney, at all relevant times, was and is an elected officer of New York County, one of the constituent counties of Defendant City; the Office was and is funded out of the City's budget; and the Office was and is a New York City agency.

137.    The New York County District Attorney was and is designated a "local officer," rather than a "state officer," under New York Public Officers Law § 2; New York has provided by statute (New York County Law §§ 53, 941) that Defendant City's constituent counties (including New York County), and hence Defendant City has liability for torts committed by County officers and employees, such as the New York County District Attorney and his assistants, and Defendant

City represents such officers and employees in judicial proceedings and indemnifies them because they are City officials.

138.    The New York County District Attorney personally and/or through his authorized delegates, at all relevant times, had final authority and constituted a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

139.    During all times material to this Complaint, the City, through its policymakers, owed a duty to the public at large and to Mr. Spruill, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs, and practices sufficient to prevent, deter, and avoid conduct by their subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

140.    By virtue of the foregoing, Defendant City is liable for having substantially caused the foregoing violations of Mr. Spruill's constitutional rights and his resultant injuries.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief against the Defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages to the extent allowable by law;

(c)    attorneys' fees;

(d)    the costs and disbursements of this action;

(e)    interest;

(f)    such other and further relief as the Court deems just and proper.

Dated: January 8, 2021
New York, New York

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Fl.
New York, New York 10016
(212) 490-0400

By: _____
Jonathan C. Moore
David B. Rankin
Marc A. Cannan
Marc Arena

*Attorneys for Plaintiff Jeremiah Spruill*